**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**AUTO-OWNERS INSURANCE COMPANY,**

    **Plaintiff,**

v.                                                             Case No.  8:10-cv-2387-T-30EAJ

**E.N.D. SERVICES, INC., et al,,**

    **Defendants.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendants' Motion for Summary Judgment (Dkt. 9) and Plaintiff's Response (Dkt. 11).  The Court, having considered the motion and response, concludes that Defendants' Motion should be denied.

### Background

Plaintiff Auto-Owners Insurance Company ("Auto-Owners") brought this declaratory judgment action seeking a declaration that it has no duty to indemnify its insured for a default judgment rendered in a separate state court action.  Defendants E.N.D. Services, Inc. ("END"), Soosie L. Lazenby and George W. Spowart (collectively "homeowners" or "home purchasers") later counterclaimed for breach of contract and statutory bad faith.

The underlying state court action involves a suit over the purchase of real estate.  In 2007, Soosie L. Lazenby and George W. Spowart purchased real estate in Belleair, FL. Subsequent to closing the sale and after taking occupancy of the property, Lazenby and

Spowart allegedly discovered undisclosed defects with the property including a history of infestation by pests, water intrusion, and serious structural deficiencies.

Prior to purchasing the property, Lazenby and Spowart hired the home inspection company END to inspect the property (at all relevant times Dominic Minicozzi was the sole owner and employee of END). The homeowners later sued END for breach of contract, negligence, and a violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). Specifically, Lazenby and Spowart allege that END failed to discover certain undisclosed defects with the property as a result of END's failure to follow the professional home inspector standards promulgated by the American Society of Home Inspectors ("ASHI"), despite END's promise to exceed such standards.

At the time that END performed the home inspection, END was covered by a commercial general liability ("CGL") insurance policy issued by Auto-Owners. After the homeowners filed suit in state court, Auto-Owners notified END that it believed END's coverage for the state court action to be excluded by a professional services exclusion included in the policy; thus, it notified END that it would not provide it with a defense.

Lacking legal representation, END failed to contest the action. As a result, the state court entered a default judgment against END in the amount of $245,940.00. END subsequently assigned its rights under its Auto-Owners insurance contract to Lazenby and Spowart. Defendants now move for summary judgment, asking this Court to declare that the "professional services exclusion" contained in END's insurance policy is not applicable and

that Auto-Owners does in fact have a duty to indemnify its insured for the default judgment entered in state court.

## Summary Judgment Standard

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex,* 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson,* 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

**Discussion**

    **A.**    **Legal Standard**

Both parties agree that Florida law governs this action. In Florida, the interpretation and construction of an insurance contract is a question of law to be decided by the Court using generally accepted rules of contract construction. *National Union Fire Ins. Co. of Pittsburgh, PA v. Underwriters at Lloyd's, London,* 971 So.2d 885, 888 (Fla. 3rd DCA 2007); *U.S. Fire Ins. Co. v. J.S.U.B., Inc.,* 979 So.2d 871, 877 (Fla. 2007). Insurance provisions granting coverage are to be construed broadly, while exclusions are to be read narrowly. *Westmoreland v. Lumbermens Mut. Cas.Co.,* 704 So.2d 176, 179 (Fla. 4th DCA 1997).

Insurance contracts are to be interpreted and construed in a manner that is "reasonable, practical, sensible, and just." *Doctors Co. v. Health Mgmt. Assocs., Inc.,* 943 So.2d 807, 809

(Fla. 2nd DCA 2006). Terms are to be given their plain and ordinary meaning and the language of the policy will control unless such language is ambiguous. *Bethel v. Sec. Nat'l Ins. Co.,* 949 So.2d 219, 222 (Fla. 3rd DCA 2006).

An insurance policy is ambiguous if "the relevant policy language is susceptible to more than one reasonable interpretation." *Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co.*, 331 Fed.Appx. 640, 645 (11th Cir. 2009). However, the mere fact that parties argue for different interpretations does not make a policy ambiguous and a court will not construe an insurance policy to reach an absurd result. *Deni Assocs of Fla. v. State Farm Fire & Casualty Ins. Co.,* 711 So.2d 1135, 1140 (Fla. 1998). If a policy is ambiguous, a court will construe the policy *against the insurer* as the draftsman of the policy. *U.S. Fire Ins. Co.,* 979 So.2d at 877.

     **B.**     **Is the Professional Services Exclusion Applicable?**

Auto-Owners argues that the professional services exclusion included in END's CGL insurance policy functions to bar coverage in this case. The exclusion, contained in an endorsement to the policy titled "EXCLUSION-INSPECTION, APPRAISAL AND SURVEY COMPANIES" states:

> This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" for which the insured may be held liable because of rendering or failure to render professional services in the performance of any claim, investigation, adjustment, engineering, inspection, appraisal or audit services.

As the charges against END in the state court action allege its failure to provide the services of a "knowledgeable professional inspector" by failing to abide by ASHI standards, Auto-Owners argues that this professional services exclusion is applicable under the facts of this case.

This Court agrees. Notably, a state appellate court recently decided a case almost perfectly on point. Specifically, in *Brown v. Oklahoma Farm Bureau Mut. Ins. Co.,* 261 P.3d 622 (Okla. Civ. App. 2011), a home inspector was sued for failing to report defects after performing a home inspection. *Id.* at 627. In *Brown,* the home inspector's CGL coverage contained a professional services exclusion with an *identical title,* and with virtually *identical language. Id.* The *Brown* Court found the professional services exclusion in that case to be unambiguous, and held that it excluded coverage. *Id.*

Moreover, the plain language of the professional services exclusion at issue in this case compels the conclusion that home inspections are an excluded professional service. As an initial matter, it is clear that the professional services exclusion is specifically intended to apply to inspection companies, such as END. Indeed, the title of the exclusion conspicuously states that it is meant to apply to "inspection, appraisal, and survey" companies. As it is undisputed that END is an inspection company, the endorsement applies to it.

In addition, the clause should be read to exclude coverage for the failure to adequately perform a *home* inspection. The clause expressly excludes certain professional services including the *performance of any...inspection*; thus, inspections are encompassed by the

exclusion. Although the clause does not specifically mention *home* inspections, it is clear that this type of inspection is contemplated by the language of the exclusion. Indeed, reading the clause as a whole, which applies to "inspection, appraisal, and survey" companies and excludes, among other things, engineering and appraisal services, it is clear that the exclusion is intended to apply to companies that perform services related to the real estate business. Moreover, the plain language of the clause excludes "all" inspections, not "some" or limited types of real-estate related inspections. Thus, home inspections should be thought to be encompassed by the exclusion as a home inspection is undeniably both a type of inspection, and related to the real estate business. As a result, a home inspection must be read to be encompassed by the exclusion.

Further, the home inspection services offered by END qualify as *professional* services. In order to determine whether a particular service qualifies as "professional" or not, one should look to the *nature of the particular act or service* itself, "as opposed to the character of the individual performing the act." *Estate of Tinervin v. Nationwide Mutual Ins. Co.,* 23 So. 3d 1232, 1237 (Fla. 4th DCA 2010), *citing Lindheimer v. St. Paul Fire & Marine Ins. Co.,* 643 So.2d 636, 638 (Fla. 3d DCA 1994). When an insurance contract fails to explicitly define the term "professional services," Florida Courts have considered, among other things, whether the service involves specialized skill, requires specialized training, is regulated, requires a degree, and/or whether there is an entity that certifies or accredits persons or that sets forth standards of practice for the performance of those services. *See, e.g., Aerothrust, Corp. v. Granada Ins. Co.,* 904 So.2d 470, 472 (Fla. 3rd DCA 2005).

Here, home inspections clearly qualify as "professional services." First, END's contract with the homeowners clearly provided for the deliverance of professional services as the contract expressly promised to provide services that exceeded that professional home inspector standards promulgated by the ASHI.

Second, the state of Florida clearly considers home inspections to be professional services as Florida both regulates home inspectors (under the statutory heading "Regulation of Professions and Occupations"), and requires home inspectors to be licensed with the state. *See* FLA. STAT. §§ 468.83-468.8325. Although Florida did not regulate, and/or license home inspectors at the time END's insurance contract was entered into, this fact does little to convince this Court that such services are not "professional." Indeed, Florida courts have made clear that whether or not a service qualifies as professional depends upon the *nature or character* of that service. *Estate of Tinervin,* 23 So. 3d at 1237. Therefore, the fact that the Florida legislature considers home inspections performed today to be professional services is strong evidence that home inspections performed in 2007 (at the time the contract was entered into) were also professional services as there is no significant difference in the nature or character of home inspections performed in 2007 and today.

Third, home inspections require specialized skill and knowledge unavailable to the general public, whether that knowledge and skill is acquired by formal or informal means.

Fourth, there have long existed professional home inspector organizations which have promulgated standards of practice for professional home inspectors. Indeed, in the instant case END explicitly promised to abide by (in fact to exceed) the professional standards of

one of these organizations; specifically, the standards set by the American Society of Home Inspectors.

Finally, the mere fact that a home inspector is not a traditional professional (such as a doctor or lawyer) is of little moment. Indeed, numerous courts have held that the exclusion may apply to a non-traditional professional as long as the exclusion of such services was fairly encompassed by the policy. For example, courts have enforced the exclusion for plumbers, exterminators, and ear piercers. *Amex Assurance Co. v. Allstate Ins. Co.*, 112 Cal. App. 4th 1246, 1252 (Cal. Court. App. 2003) ("ordinary meaning of word 'professional' is no longer limited to the 'learned professions' but has a broader scope that includes skilled services such as plumbing"); *Yasuda Fire & Marine Ins. Co., Ltd. v. Heights Enters.,* 1998 Guam LEXIS 15, *24-29 (applying exclusion to exterminators); *Hollingsworth v. Commercial Union Ins. Co.,* 208 Cal.App.3d 800, 809-10 (Cal. Court. App. 1989) (applying exclusion to ear piercers).

For all of the above reasons, this Court concludes that the professional services exclusion included in END's CGL policy is applicable under the facts of this case.[1]

In arguing that home inspections do not constitute professional services as a matter of law, Defendants primarily rely on the Florida case *Aerothrust, Corp. v. Granada Ins. Co.,*

---

[1] Before participating in this lawsuit, it appears that all of the Defendants also held END's home inspection services to constitute "professional" services. Indeed, in the state complaint Lazenby and Spowart alleged that END failed to supply the services of a "knowledgeable *professional inspector*," by failing to abide by the professional home inspector standards as promulgated by the ASHI. In addition, END's promotional materials clearly identified END as providing *professional* home inspection services. Nonetheless, Defendants now take the position that home inspections do not qualify as "professional" services within the meaning of the exclusion.

904 So.2d 470, (Fla. 3rd DCA 2005). In *Aerothrust,* the insured company, Sunshine, inspected and maintained hoists at Aerothrust's facility. *Id.* at 471. Later, one of the hoists failed, dropping and damaging the jet engine that it was supporting. *Id.* Aerothrust sued Sunshine for damages, alleging that Sunshine failed to properly inspect one of the hoists by failing to "ensure that the proper type of bolt and nut were used on the hoist." *Id.* Granada, Sunshine's insurer, argued that it had no duty to indemnify Sunshine as it contended that a professional services exclusion precluded coverage. *Id.*

The Court ultimately found that this professional services exclusion did not bar coverage. *Aerothrust,* 904 So.2d at 472. Upon analyzing the excluded list of services, the Court noted that crane inspection services were not clearly included in the list, and that the excluded list of services meant to encompass only those services that required specialized training. *Id.* The Court went on to find, among other things, that a crane inspector was not required to have *any* specialized training or education, and that no entity certified, accredited, and/or set forth standards for crane operators. *Id.* Given these findings, the Court ultimately concluded that crane inspection did not constitute a professional service as contemplated by the specific professional services exclusion included in the policy. *Id.* Defendants argue that this Court should follow *Aerothrust* and find that END's professional services exclusion does not bar coverage.

Defendants' reliance on this case is misplaced. Indeed, in *Aerothrust* it was unclear whether the reference to "inspection" services in the exclusion had anything to do with crane inspections. As the term "inspection" was inserted into a string of terms related to the real

estate business, while home and building inspections may have been contemplated by the policy, it was far from clear that the exclusion meant to encompass crane inspections (for the full text of the exclusion in *Aerothrust, see* Answer Brief of Appellee Granada Ins. Co., 2005 WL 5587467, at*12-13). Here, there is no similar ambiguity. As discussed previously, the reference to "inspection" services in the professional services exclusion contemplates real estate services, and thus should include home inspections.

Moreover, home inspectors, unlike the crane inspectors in *Aerothrust,* are now subject to licensing and regulation in Florida. In addition, professional associations of home inspectors have promulgated professional standards of practice for decades, whereas no similar body promulgated such standards for the crane inspectors in *Aerothrust.* Finally, unlike here, it does not appear that the inspector in *Aerothrust* explicitly agreed to abide by the standards of a professional code of conduct.

A second case relied on by Defendants is *Evanston Ins. Co. v. Budget Group, Inc.,* 2006 U.S. Dist. LEXIS 18054 (N.D. Fla. 2006). In that case, the Court held that a generic professional services exclusion (which excluded claims "arising out of the rendering of or for failure to render any professional services") did not exclude the services performed by a car rental agent after one such agent allegedly failed to warn a renter of the dangers associated with passenger vans. *Id.* at *3-4. This case can be distinguished on at least three grounds. First, the professional services exclusion in *Evanston* was a generic exclusion which did not specifically refer to the activity at issue. *Id.* at *4. Second, there was no evidence that the car rental agent position required any kind of specialized training or license.

Third, there did not appear to be any body which promulgated standards of professional conduct, as is the case here.[2]

Finally, Defendants argue that Dominic Minicozzi, the sole owner and employee of END, lacked the skills, education, and training that might make him a competent "professional" home inspector. Even assuming this to be true, as discussed previously, in considering whether services can be labeled "professional," Florida courts focus not on the character of the individual performing the services, but on the nature or character of the act or services performed. *Estate of Tinervin,* 23 So. 3d at 1237. As discussed in detail earlier in this Order, home inspection services qualify as professional services, at least in the context of the particular exclusionary clause at issue. As a result, even if Minicozzi lacked the skills to perform competent home inspections, his home inspection services still qualified as "professional."

### C. Conclusion

As discussed above, this Court concludes that the "professional services exclusion" contained in END's insurance policy is applicable in this case. As Defendants' two counterclaims of (1) breach of contract and (2) statutory bad faith both look to be premised on Defendants' belief that the professional services exclusion is inapplicable, it appears that Plaintiff Auto-Owners is entitled to summary judgment on both counterclaims in light of the Court's finding that the exclusion is applicable. In addition, it would appear that Plaintiff is

---

[2]Defendants also relied upon a third case, *Fireman's Fund Ins. v. Gerling American Ins.,* 2008 U.S. Dist. LEXIS 60870 (N.D. Calif. 2008), a California case which applied Florida law. This case can similarly be distinguished from the case at bar.

entitled to summary judgment in its declaratory judgment action, which asks this Court to declare that Plaintiff has no duty to indemnify its insured END for the claims brought against it in the state court action, and/or to pay the $245,940 default judgment rendered against END in that state court action.

Although Plaintiff Auto-Owners has failed to make a motion for summary judgment in this action, because the Court's holding herein is based on a predominant issue of law, and the record on the issues are fully developed, the Court has the authority, in its discretion, to enter summary judgment *sua sponte* in favor of the Plaintiff.  *See Artistic Entm't v. City of Warner Robins,* 331 F.3d 1196, 1202 (11th Cir. 2003).  However, the Court will provide Defendants fourteen (14) days from the date of this Order to file a response, if they so choose, discussing why final summary judgment in favor of the Plaintiff on all counts should not be granted, *notwithstanding* the fact that this Court has concluded that the professional services exclusion is applicable.[3]

It is therefore **ORDERED AND ADJUDGED** that:

1.     The Motion for Summary Judgment Submitted by Defendants E.N.D. Services, Inc., Soosie L. Lazenby, and George W. Spowart (Dkt. 9) is hereby DENIED.

2.     Defendants have fourteen (14) days from the date of this Order to file a response, if they so choose, discussing why final summary judgment in favor of the Plaintiff

---

[3]This Court will not entertain any further arguments purporting to show that the professional services exclusion is inapplicable.

should not be granted.  If Defendants do not choose to file such a response within this time period, the Court will enter final summary judgment in favor of Plaintiff Auto-Owners.

**DONE** and **ORDERED** in Tampa, Florida on December 15, 2011.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2010\10-cv-2387.msj.frm